**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **ESTHER EHRMAN** | : | **CIVIL ACTION NO.:** |
| Plaintiff, | : | |
| vs. | : | |
| **MOUNT VERNON CITY SCHOOL DISTRICT,** | : | |
| Defendant. | : | **AUGUST 25, 2021** |

**COMPLAINT**

**I.   INTRODUCTION**

1. Plaintiff, Esther Ehrman ("Plaintiff" or "Ehrman") brings claims against her employer, Mount Vernon City School District ("Defendant" or "Mount Vernon"). Ehrman is a Special Education teacher with Mount Vernon. She has heart disease. As a result of her heart disease, she is at "high risk" of suffering serious illness or death if she contracted COVID-19. However, due to her heart disease, she is unable to wear a mask. Therefore, in the 2020-2021 academic year, she requested that she be permitted to teach remotely but her request was denied. On July 29, 2021, she again requested that she be permitted to teach remotely during the 2021-2022 academic year as an accommodation for her disability but her request was again denied.

2. Plaintiff requests a trial by jury on all issues triable to a jury.

1

## II.  NATURE OF THE CLAIMS

3. The unlawful discrimination described herein was committed in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 et. seq, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq. and the New York Human Rights Law (NYSHRL"), N.Y. Executive Law §§ 290 et. seq.

4. Plaintiff filed a charge of disability and age discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 14, 2021. Plaintiff will file an Amended Complaint alleging violations of the Americans with Disabilities Act of 2008, 42 U.S.C. § 12201 et. seq. ("ADAAA"), following the EEOC's completion of its investigation and/or issuance of a Notice of Right to Sue.

5. Any and all other prerequisites to the filing of this suit has been met.

## III.  JURSIDICTION & VENUE

6. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331.

7. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper within this Judicial District because all or a substantial part of the events or omission giving rise to the claims herein occurred in the Southern District of New York.

## IV.  THE PARTIES

### Plaintiff Esther Ehrman

9. Plaintiff Esther Ehrman is a resident of Danbury, CT.

10. At all relevant times, the Plaintiff was an "employee" within the meaning of all the ADEA and NYSHRL and a "qualified individual with a disability" under Section 504.

**Defendant Mount Vernon City School District**

11. Defendant Mount Vernon City School District is a public entity located at 165 North Columbus Avenue, Mount Vernon, New York 10553 and administers Mount Vernon's public schools. The Defendant is a "federal fund recipient," as defined by Section 504 and is an "employer" within the meaning of the ADEA and NYSHRL.

## V. FACTS

12. The Plaintiff started working for the Defendant on September 1, 2002. She is a Special Education Teacher.

13. The Plaintiff has performed well throughout her 19-year tenure with the Defendant.

14. In February, 2019, the Plaintiff was diagnosed with heart disease.

15. The novel coronavirus, which is commonly known as COVID-19, is a severe respiratory virus first identified in Wuhan, China in December, 2019 and was declared a public health emergency of international concern in January, 2020. The first known case of COVID-19 was confirmed in Washington State in January, 2020.

16. COVID-19 is a severe, acute respiratory virus and may result in serious illness or death. It spreads primarily from person to person through exposure to respiratory fluids carrying infectious virus, which can occur through direct inhalation, depositing fluids on exposed mucous membranes in the mouth, nose or eyes through sprays and touching mucous membranes or contaminated hands. Centers for Disease Control and Prevention, Scientific Brief: SARS-COV-

2 Transmission (May 7, 2020), https://www.cdec.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html.

17. On March 7, 2020, then-New York State Governor Andrew Cuomo, declared a state of emergency to try to control the spread of the COVID-19 outbreak in New York State.

18. On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a pandemic.

19. To reduce COVID-19's spread, the United States Centers for Disease Control and Prevention ("CDC") recommended implementing community mitigation strategies to slow transmission of COVID-19, including limiting the number of people permitted in gatherings and social distancing in smaller gatherings.

20. On March 13, 2020, then-President Donald J. Trump declared COVID-19 to be a national emergency.

21. On March 16, 2020, then-Governor Andrew Cuomo issued an Executive Order directing schools in New York to close for two weeks.  Under subsequent Executive Orders issued by then-Governor Cuomo, schools in New York remain closed.  On May 1, 2020, then-Governor Cuomo issued an Executive Order closing schools for the rest of the academic year which had been scheduled to end in June, 2020.

22. New York State issued a plan to reopen schools for the 2020-2021 Academic Year.  The reopening plan stated that "a reasonable accommodation to work from home will be considered under the ADA and in line with the medical conditions as set forth by the U.S. Centers for Disease Control and Prevention."

4

23. On July 24, 2020, Defendant's Superintendent of Schools, Dr. Kenneth Hamilton, requested that any teachers and staff with underlying medical conditions submit requests to work from home and/or request an accommodation by August 1, 2020.  In his email to teachers and staff, he stated that "[i]n order to be fully prepared for our students' return, it is important for us to know whether there are faculty and staff members who have serious underlying medical conditions that may compromise their return."

24. On July 27, 2020, the Plaintiff sent an email to Dr. Hamilton and stated that:

> "Last year I was diagnosed with an underlying condition that renders me very vulnerable to increased risk of severe COVID-19 per the CDC guidelines.
>
> Therefore, I will be unable to work in person this fall.  Medical documentation from my cardiologist, Dr. Monica Reynolds, will be forwarded to you by Monday, August 4th."

25. On July 30, 2020, the Plaintiff sent Dr. Hamilton a letter from her physician, Dr. Monica Reynolds.  Dr. Reynolds stated that she was treating Ehrman for atrial fibrillation, adding:

> "She is a special education teacher and has been asked to return to the classroom to teach in-person in the fall, 2020.  The Covid pandemic is still very active.  Her underlying heart condition puts her at significant risk for severe complications from COVID-19."
>
> "I recommend that she NOT return to in-classroom work during the pandemic."

26. On August 11, 2020, Dr. Hamilton informed teachers and staff by email that "[w]e are reviewing each request on an individual basis and engaging our medical and legal experts to assist where there may be some ambiguity.  I will be providing

5

you with a response as soon as practical.  <u>Please do not assume your request has been approved.</u>"  (Emphasis in original.)

27. On August 28, 2020, Dr. Hamilton informed the Plaintiff by letter that (1) the District intended to begin the school year with starting fully remote, (2) all staff will be required to report to their assigned work location to deliver remote instruction for students from empty classrooms, (3) "you requested an accommodation to work from home; however, I believe defaulting to this method of instruction provides reasonable accommodation consistent with your request," and (4) appropriate personal protective equipment ("PPE") would be made available.  The letter further stated that, if the Plaintiff believed she needed further accommodation beyond PPE and delivering instruction from an empty classroom or when the District reverted to the hybrid model on October 5, 2020, she should submit an updated request detailing the specific accommodation she was requesting.

28. On September 1, 2020, the Plaintiff told Dr. Hamilton she had received his response denying her accommodation and her physician would need more time to submit the workplace accommodation form.  The Plaintiff added that, because she believed her health risk was so high, she requested permission to work from home for that week only so she could remain safe until her medical documentation was provided.

29. On September 1, 2020, the Plaintiff sent Dr. Hamilton an email with a letter from her attorney at that time regarding her inability to report to the building for duty.

She explained that her doctor was on vacation that week so she would not be able to provide further medical documentation until Monday, September 6, 2020.

30. Later that day on September 1, 2020, Dr. Hamilton denied her request for a temporary accommodation of working remotely for one week.

31. On September 3, 2020, the Plaintiff applied for leave under the Family Medical Leave Act ("FMLA"). She stated on the form that she expected the leave would continue until November 11, 2020.

32. On September 7, 2020, Dr. Hamilton sent a letter to all staff stating that employees would be working from home.

33. On September 9, 2020, the Plaintiff was informed that her FMLA leave was approved. Her return-to-work date was October 3, 2020.

34. On September 29, 2020, the Plaintiff informed the Defendant that she was having heart surgery the following day. She requested that she be permitted to return to work on October 5, 2020.

35. In support of the Plaintiff's request to return to work, she submitted a letter from her cardiac electrophysiologist, Dr. Robert D. Winslow, stating that she could return to work with restrictions, adding "no driving one-week post-surgery. No N-95 mask – use alternative."

36. Later in the day on October 2, 2020, Jessica Graves from the Defendant's Office of Human Resources informed the Plaintiff that she could return to work.

37. On Monday, October 5, 2020, the Plaintiff returned to work. At the time, all the instruction was remote and teachers were working from home.

38. On October 9, 2020, Dr. Hamilton announced in an email that all staff should report to work on November 5, 2020.

39. On October 14, 2020, the Plaintiff emailed Dr. Hamilton and his personal associate, Lisa Thorpe-Fraley, a request for an accommodation to be permitted to work from home when students returned to school in early November, 2020. The Plaintiff also provided additional medical documentation.

40. On October 19, 2020, the Plaintiff's request to work remotely was denied by the Respondent's Assistant Superintendent of Human Resources, Marci Tiggs.

41. On November 4, 2020, Dr. Hamilton notified teachers and staff that they would need to return to school the following day. He reminded everyone to remember to wear face coverings at all times.

42. On November 4, 2020, the Plaintiff attended a FIT test to use the N-95 mask and failed. She became ill in front of her colleagues and was taken to urgent care after fainting.

43. On November 9, 2020, the Plaintiff's FMLA leave was reinstated and granted until December 23, 2020.

44. On November 16, 2020, the Plaintiff contacted Ms. Tiggs to again request accommodation. She explained that her condition had deteriorated since Dr. Winslow said she was ready to return to work after cardiac ablation on October 2nd. The Plaintiff attached a letter from Dr. Lila Rosenthal requesting that she be granted permission to work remotely during the pandemic "due to multiple chronic severe complications that could be fatal were she to contract COVID-19 with in-person work." Dr. Rosenthal elaborated that "wearing a mask for more

than a few minutes at a time is not feasible given the nature of some of her health conditions. Therefore, it is imperative that Ms. Ehrman not enter the school building for any reason. She must be granted the workplace accommodation of working from home."

45. In November, 2020, the Plaintiff was diagnosed with dysautonomia. It is a condition in which the automatic nervous system does not work properly. It may affect the functioning of the heart, bladder, intestines, sweat glands, pupils and blood vessels.

46. In December, 2020, the Plaintiff was diagnosed with Postural Orthostatic Tachycardia Syndrome ("POTS"). POTS is an abnormal increase in the heart rate which affects blood flow and occurs after sitting up or standing.

47. The Plaintiff received a letter dated December 1, 2020 from Ms. Tiggs. It stated that the District had re-evaluated her request for a temporary workplace accommodation. According to Ms. Tiggs, "[w]e will honor your request to work remotely during hybrid and in-person instruction starting January 4, 2021."

48. The Plaintiff received another letter dated December 22, 2020 from Ms. Tiggs which stated that "[d]ue to a material change in circumstances arising after the date that your temporary interim accommodation was granted to you needs to be modified. Beginning Monday, January 4, 2021, you are required to attend work in person at your required work location." As a result, the Defendant revoked its offer to accommodate the Plaintiff's disabilities by permitting her to work remotely.

49. The Defendant failed to explain what "change in circumstances" occurred which led them to revoke the Plaintiff's request to work remotely that they had granted just three weeks before.

50. On information and belief, on or about December 22, 2020, the Defendant revoked the previously granted permission to approximately 20 teachers to teach remotely.

51. The Defendant granted permission to work remotely as an accommodation for a medical condition to five teachers who, on information and belief, were under 50 years of age.

52. The Respondent denied permission to work remotely to five teachers who, on information and belief, were over 50 years of age.

53. The age of the teachers who requested an accommodation was a substantial factor which made a difference when the Defendant decided whether to permit a teacher to teach remotely as an accommodation for his or her "high risk" medical condition.

54. The Defendant's decision as to whether to grant permission to permit a teacher to teach remotely as an accommodation for his or her medical condition adversely affected teachers over 50 years of age.

55. Ms. Tiggs' December 22, 2020 letter stated that, if the Plaintiff believed she was eligible for a COVID-19 related or another type of leave, she could complete the appropriate forms and submit them to Jessica Graves in the Office of Human Resources. The letter further stated that if the Plaintiff failed to report to work on

January 4, 2021 without a valid reason, it would be considered an act of insubordination which might subject her to disciplinary action.

56. The Plaintiff called in sick from January 4-8, 2021.

57. On January 8, 2021, the Plaintiff requested leave from January 11-22, 2021 to get treatment for POTS.

58. On January 25, 2021, the Committee on Preschool Education ("CPSE") requested that the Plaintiff be transferred to their committee.  The CPSE is a remote position. However, the Defendant did not respond to the transfer request.

59. Due to a cough and fever, the Plaintiff informed the Defendant that she would need to quarantine for two weeks in case she had COVID.  She took a COVID test and it was negative.

60. On February 7, 2021, the Plaintiff's physician ordered more medical tests.  The Plaintiff's doctor believed she had Stage A congestive heart failure due to pervasive atrial fibrillation.  The arrhythmia had caused her heart muscle to stretch, resulting in a cough, low grade fever, exhaustion and edema.  She was required to take an ACE inhibiter and a diuretic.  The Plaintiff was also told by her physician that she would not be able to wear a mask while in school.

61. On February 10, 2021, the Plaintiff sent an email to Ms. Tiggs again requesting a reasonable accommodation.  The Plaintiff attached to the request a Request for Workplace Accommodation form from her physician, Dr. Monica Reynolds, requesting that Ehrman be permitted to work at home and/or telework.  The Plaintiff explained that she had been diagnosed with congestive heart failure. She elaborated that masks caused her atrial fibrillation to increase along with

lack of energy, breathing intolerance, increased heart and breathing rate, decreased blood pressure, migraines and dizziness. After pointing out that the Defendant requires its staff and teachers to wear masks in schools, Dr. Reynolds said that the Plaintiff had been diagnosed with heart disease and that (1) "wearing a mask for extended periods exacerbate this condition drastically" and (2) "by not wearing a mask, Ms. Ehrman will be at a significant risk of COVID-19 infection. Patients with her condition have an increased risk of complicated or fatal results from COVID-19 …"

62. The Plaintiff also included with her February 10, 2021 accommodation request (1) a letter from the POTS treatment center dated January 25, 2021, stating that she was receiving treatment from the POTS treatment center, that she would need to work from home while they attempted to increase her oxygen levels during the treatment plan so not having to work outside during the pandemic would be helpful without wearing a mask all day, (2) her November 16, 2020, letter from Dr. Rosenthal stating that the Plaintiff needed to work remotely due to her high-risk medical condition which would place her at high risk of complications if she contracted COVID-19 and that, in light of her medical condition, wearing a mask for more than a few minutes was not possible, and (3) a February 7, 2021 letter from Dr. Rosenthal saying that the Plaintiff had recently been diagnosed with a new cardiac condition and that wearing a mask at work would be unreasonable.

63. Due to the substantial number of teachers, staff and students that have tested positive for COVID-19 throughout this school year, schools throughout the Mount

12

Vernon District often shut down and proceeded with remote instruction. When that happened, the Plaintiff taught her class remotely.

64. On information and belief, at the Lincoln School where the Plaintiff taught, five kindergarten teachers and three kindergarten teacher's assistants contracted COVID-19.

65. At the start of the 2020-2021 academic school year, the Plaintiff had 210 sick days. She had to use sick days when the school was not fully remote. She now only has about 130 sick days left.

66. It would not have created an undue hardship to the Defendant to have permitted the Plaintiff to teach remotely. Her class consisted of just five special education students, two of whom participated in classes remotely. The Plaintiff had two teaching assistants who were working in person with her class under her constant guidance.

67. Heart disease is one of the medical conditions which the CDC has identified as "high risk" for serious illness or death if the person contracted COVID-19. https://www.cdc.gov/coronavirus/2019/people-with-certain-medical-conditions.html.

68. The Equal Employment Commission ("EEOC") has stated in its COVID-19 Guidance that persons with certain impairments are at a greater risk from COVID-19 and, as a result, may be entitled to an accommodation.

69. The Plaintiff's date of birth is February 8, 1963. She is presently 58 years of age.

**Ehrman Requests Accommodation for 2021-2022 Academic Year**

13

70. In the Spring of 2021, Dr. Hamilton announced that the Defendant would follow a "No Remote" policy in the 2021-2022 academic year.

71. On July 29, 2021, the Plaintiff sent a letter to Assistant Superintendent for Human Resources, Marci Tiggs, and requested that the Defendant make an exception to its "No Remote" policy for the 2021-2022 academic hear and permit her to teach remotely as an accommodation for her disabilities.  She again explained that she had heart disease which, according to the CDC, placed her at higher risk of death or serious illness if she contracted COVID-19.  She added that she could not wear a mask because doing so increased heart fibrillation and caused a lack of energy, breathing intolerance, increased heart and breathing rate, decreased blood pressure, migraines and dizziness.  In addition to including medical reports with her request, she explained that her heart disease had progressed over the past several months.

72. On August 4, 2021, Dr. Hamilton sent a letter to all staff about the school district's upcoming plans for the 2021-2022 school year.  He acknowledged that the new COVID Delta variant has shown a resurgence of COVID cases in the area.  Nevertheless, he stated that "[y]ou should be well advised that, as of this writing, there are no plans to offer a remote option for 2021-2022."  He elaborated that "[w]e already know that many parents are not ready to send their children back to school, but we are planning for a 100% in-person instruction delivery in September. As of this writing, we will no longer offer remote or hybrid options."

73. In a letter dated August 6, 2021, Jessica Graves, Personal Associate, Office of Human Resources, denied Ehrman's request to work remotely, adding that "[s]taff

14

are expected to provide instruction to students in-person for the 2021-2022 school year."

**Ehrman Was and Is a "Qualified Individual With a Disability"**

74. At all relevant times, Ehrman has been, and continues to be, "a person with a disability," as defined by Section 504. She has a physical impairment, as her heart disease is a physiological condition which effects the circulatory system. 29 C.F.R. § 1302(h)(l). Her physical impairment substantially limits her in one or more major life activities, including, but not limited to, breathing and substantially limits her respiratory and circulatory bodily functions.

75. At all relevant times, the Plaintiff has been, and continues to be, "qualified" to perform the essential functions of her position as a Special Education Teacher with a reasonable accommodation of remote teaching.

76. Section 504 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq. and their regulations may require "modifications or adjustments to the manner or circumstances under which a position held or desired is customarily performed." Lovejoy-Wilson v. NOCO Motor Fuel Co., 263 F. 3d 208, 217 (2d Cir. 2001) (quoting 29 C.F.R. § 1630.2(o)(l)(ii). Therefore, employers might be required to modify or adjust the manner in which instruction is provided to incorporate technology, such as remote instruction.

77. Courts have repeatedly held that, when considering whether job duties can be performed remotely, employers must consider technological advances. See, e.g., Mosby-Meachum v. Memphis Light, Gas & Water Division, 883 F. 3d 595, 604-05

(6th Cir. 2018); Soloman v. Vilsack, 763 F. 3d 1, 9-11 (D.C. Cir. 2014); EEOC v. Ford Motor Co., 752 F. 3d 634, 641 (6th Cir. 2014).

78. The Plaintiff's heart disease and related conditions are physical and medical impairments resulting from physiological conditions which prevent the exercise of normal bodily functions, as defined by New York Executive Law § 292(21).

79. With an accommodation of remote teaching, Ehrman could perform the duties of her job as a Special Education Teacher in a reasonable manner.

## V. LEGAL CLAIMS

### COUNT ONE – SECTION 504 - FAILURE TO ACCOMMODATE

Paragraphs 1-79 of this Complaint are incorporated by reference the same as if fully pleaded.

80. The Defendant failed to provide the Plaintiff with a reasonable accommodation during the 2020-2021 Academic Year.

81. The Defendant failed to provide the Plaintiff with a reasonable accommodation for the 2021-2022 Academic Year.

82. The Defendant knew that its actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights.

83. As a result of the Defendant's violation of Section 504, the Plaintiff suffered severe damages, including, but not limited to, loss of income and benefits and emotional distress.

### COUNT TWO – NYSHRL – FALURE TO ACCOMMODATE

Paragraphs 1-83 of this Complaint are incorporated by reference the same as if fully pleaded.

84. The Defendant failed to provide the Plaintiff with a reasonable accommodation during the 2020-2021 Academic Year.

85. The Defendant failed to provide the Plaintiff with a reasonable accommodation for the 2021-2022 Academic Year.

86. As a result of the Defendant's violation the NYSHRL, Plaintiff suffered severe damages, including, but not limited to, loss of income and benefits and emotional distress.

### COUNT THREE – ADEA

Paragraphs 1-86 of this Complaint are incorporated by reference the same as if fully pleaded.

87. The Plaintiff's age was a substantive factor which led the Defendant in December 2020 to rescind its offer permitting her to teach remotely.

88. The Defendant's willfully violated the ADEA.

89. As a result of the Defendant's violation of the ADEA, the Plaintiff suffered severe damages, including, but not limited to, loss of income and benefits.

### COUNT FOUR – NYSHRL

Paragraphs 1-89 of this Complaint are incorporated by reference the same as if fully pleaded.

90. The Plaintiff's age was a substantive factor which led the Defendant in December 2020 to rescind its offer permitting her to teach remotely.

91. As a result of the Defendant's violation of the NYSHRL, the Plaintiff suffered severe damages, including, but not limited to, loss of income and benefits and emotional distress.

## DEMAND FOR JURY TRIAL

92. Plaintiff herein demands a trial by jury for all issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Esther Ehrman, demands that a judgment be entered in her favor and that the Court order and award Plaintiff the following relief against the Defendant:

A. A declaratory judgment that the actions, conduct, and practices of the Defendant complained of herein violate the laws of the United States and the State of New York;

B. An award of damages against the Defendant, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

C. An award of damages against the Defendant, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D. An award of liquidated damages in an amount to be determined at trial;

E. Pre-judgment interest on all amounts due;

F. An award of Plaintiff's reasonable attorneys' fees and costs; and

G. Such other relief as may seem just and proper.

THE PLAINTIFF

By: /s/ Gary Phelan
Gary Phelan (2284230)
Mitchell & Sheahan, P.C.

999 Oronoque Lane, Suite 203
Stratford, CT 06614
(203) 873-0240
(203) 873-0235 (fax)
gphelan@mitchellandsheahan.com
*Counsel for Esther Erhman*